AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

X FILED        ___ LODGED
___ RECEIVED    ___ COPY

APR - 6 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _NM_____ DEPUTY

In the Matter of the Search of
One (1) Blue Motorola Model XT2513V Cellular
Telephone with International Mobile Equipment Identity
("IMEI") number 350460823092616

Case No. 26 -1268MB

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ___4/20/2026___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 4/6/2026 at 11:25am _____
*Judge's signature*

City and state: Yuma, Arizona_____    Honorable James F. Metcalf, United States Magistrate Judge__
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a blue Motorola Model XT2513V cellular telephone with International Mobile Equipment Identity ("IMEI") number 350460823092616 (hereafter, the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at the United States Homeland Security Investigations (HSI) Yuma Office vault, in Yuma, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance), and 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute a Controlled Substance), and including:

   a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

   c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e.  any information recording schedule or travel;

   f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

   g.  contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos;

photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

| | |
|---|---|
| _X_ FILED | ____ LODGED |
| ____ RECEIVED | ____ COPY |

# UNITED STATES DISTRICT COURT
for the
District of Arizona

APR - 6 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY **NM** _____ DEPUTY

In the Matter of the Search of
One (1) Blue Motorola Model XT2513V Cellular
Telephone with International Mobile Equipment Identity
("IMEI") number 350460823092616

Case No. **26 - 1268 MB**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

**See attached Affidavit of Special Agent David Beatty**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA William Bryan

*Digitally signed by WILLIAM BRYAN Date: 2026.04.06 10:00:17 -07'00'*

**DAVID BEATTY**

*Digitally signed by DAVID BEATTY Date: 2026.04.06 09:54:27 -07'00'*

*Applicant's Signature*

David Beatty, Special Agent, DEA
*Printed name and title*

Sworn telephonically and signed electronically.

Date: _4/6/2026_

*Judge's signature*

City and state: Yuma, Arizona

Honorable James F. Metcalf, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

*Property to be searched*

The property to be searched is a blue Motorola Model XT2513V cellular telephone with International Mobile Equipment Identity ("IMEI") number 350460823092616 (hereafter, the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at the United States Homeland Security Investigations (HSI) Yuma Office vault, in Yuma, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

*Property to be seized*

1.    Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance), and 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute a Controlled Substance), and including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    e.  any information recording schedule or travel;

    f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

    g.  contextual information necessary to understand the above evidence.

2.    Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos;

photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, David Beatty, being first duly sworn, hereby deposes and states as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

1.    Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone described more particularly in Attachment A (hereafter, the "SUBJECT CELLULAR TELEPHONE"), and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2.    Your Affiant is a Special Agent with the United States Department of Justice – Drug Enforcement Administration (DEA) an investigator/law enforcement officer of the United States within the meaning of Title 18, United States Code Section 2510(7) – an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code Section 2516. Your Affiant has been employed with DEA since January of 2021. Your Affiant is currently assigned to DEA's Yuma Resident Office (YRO), a component of DEA's Phoenix Field Division. Specifically, your Affiant is assigned to Enforcement Group 56 (EG56) of the YRO and has been assigned to the group since July of 2021.

3.    In preparation to become a DEA Special Agent, your Affiant completed a 16-week required training in Quantico, Virginia, upon beginning employment. During the 16-week training, your Affiant received instruction on federal laws relating to drug-related offenses and criminal investigations, drug identification, physical surveillance, undercover negotiations, electronic surveillance, and case preparation. Your Affiant also received training that focused on the transportation and distribution of controlled substances,

including the identification of packaging and distribution techniques used by persons involved in the transportation and distribution of controlled substances.

4.    As a member of YRO EG56, your Affiant is responsible for investigating crimes that involve the unlawful importation of controlled substances, including methamphetamine, cocaine, heroin, fentanyl, and the unlawful exportation of proceeds derived from the sale of controlled substances. YRO EG56 conducts violations of Title 21 investigations and specializes in the detection, penetration, and dismantlement of Mexican Drug Trafficking Organizations (DTOs), often in coordination with the Federal Bureau of Investigation (FBI), United States Immigration and Customs Enforcement (ICE)/Homeland Security Investigations (HSI), United States Border Patrol (USBP), Customs and Border Protection (CBP), and state/local law enforcement personnel designated as Task Force Officers (TFOs). These investigations have culminated into the issuance of search warrants, arrests, and convictions.

5.    By virtue of my employment as a Special Agent, your Affiant has performed various tasks, which include, but are not limited to:

a.  Functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs;

b.  Interviewing confidential sources (CS) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments);

c.  Functioning as a case agent, entailing the supervision of specific investigation involving the trafficking of drugs and the laundering of monetary instruments.

6.    In the course of conducting drug investigations, your Affiant has consulted with other experienced investigators concerning the practices of drug traffickers and the

2

best methods of investigating them. In preparing this affidavit, your Affiant has conferred with other Special Agents and other law enforcement officers, who share the opinions and conclusions stated herein. Furthermore, your Affiant has personal knowledge of the following facts or has learned them from the individual(s) mentioned herein.

7.    The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; and surveillance conducted by law enforcement officers.

8.    Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.    BASIS FOR PROBABLE CAUSE

9.    On March 19, 2024, investigators were monitoring a pole camera facing a residence located at 129 Las Praderas Street, in San Luis, Arizona. At approximately 1:48 p.m., investigators observed a black Kia Forte bearing Arizona license plate "TMA61S" arrive at the 129 Las Praderas residence. Two women (later identified as Janie Gill ("GILL") and Miracle Brown-Jeter ("BROWN-JETER") exited the Kia with two dogs. Approximately eight minutes later, investigators observed a white Altima bearing Arizona license plate "PFA6YP" arrive at the 129 Las Praderas residence, whereafter Mary Brown ("BROWN") exited the white Altima. All three women walked towards a trailer located behind the 129 Las Praderas residence, and walked out of the view of the pole camera. Approximately 16 minutes later, investigators observed the three women return to the street, with BROWN carrying a black duffle bag. BROWN placed the black duffle bag in the trunk of the Kia Forte. GILL and BROWN-JETER then entered the Kia Forte and

3

BROWN entered the white Nissan. Both the Kia Forte and the white Nissan departed the area at approximately 2:15 p.m.

10. Querying law enforcement databases, investigators discovered that both the Kia Forte and the white Nissan appeared to be travelling towards Los Angeles, California. Investigators contacted Border Patrol agents located at checkpoints on Highway 86 and 111 and notified them of the black Kia's approach.

11. At approximately 4:48 p.m., Border Patrol agents stopped the black Kia at the Highway 86 checkpoint near the Salton Sea in California. GILL was the driver and sole occupant of the vehicle. After a positive drug-detecting canine alert, Border Patrol agents discovered a black duffle bag in the trunk of the black Kia containing 15 square vacuum sealed packages containing a white powdery substance. The total aggregate weight of the packages was approximately 16.64 kilograms. While the substance initially field-tested positive for cocaine, later laboratory analysis indicated that the substance was in fact fentanyl.

12. During a post-*Miranda* interview with GILL, GILL stated that at the 129 Las Praderas residence, she (GILL) observed BROWN enter a trailer, return with a duffle bag, and place the duffle bag inside the trunk of the black Kia. GILL stated that BROWN instructed her (GILL) to drive to Los Angeles, California and that BROWN would send her (GILL) an address when she (GILL) arrived. GILL stated that she (GILL) assumed that she (GILL) was transporting drugs because she (GILL) expected to be paid US$3,000. GILL told law enforcement officers that BROWN had asked her (GILL) on multiple prior occasions to travel. GILL stated that BROWN was only a middleman for BROWN's boyfriend who GILL identified as "Fernando"[1]. GILL stated that her girlfriend, BROWN-

---

[1]Law enforcement officers later identified "Fernando" as Fernando Manuel Rodriguez ("RODRIGUEZ").

JETER, was driving a white Nissan Altima ahead of her (GILL) to ensure that law enforcement officers were not utilizing drug-detecting canines at the Border Patrol checkpoint. GILL stated when BROWN-JETER left the checkpoint, BROWN-JETER contacted GILL to inform her (GILL) that there were no drug-detecting canines working at the checkpoint. Investigators discovered a cellphone in GILL's possession. GILL provided written consent to investigators to search and download the contents of GILL's cellphone. Law enforcement officers ultimately released GILL.

13.     On April 17, 2024, investigators with the DEA and Homeland Security Investigations (HSI) executed simultaneous federal search warrants at a residence located at 108 South 15th Avenue in Yuma, Arizona, and a residence located at 2312 North Barrios Avenue, in San Luis, Arizona. Law enforcement officers had observed BROWN on multiple occasions at both addresses during surveillance. At the 108 South 15th Avenue residence, investigators discovered various marijuana products. At the 2312 North Barrios Avenue residence, investigators discovered approximately 2.22 kilograms of counterfeit fentanyl pills.

14.     Based upon ongoing surveillance, investigators later determined that both BROWN and her boyfriend, RODRIGUEZ, absconded to San Luis, Rio Colorado Mexico[2].

15.     On March 7, 2026, law enforcement officers arrested BROWN and RODRIGUEZ at the San Luis Port of Entry in San Luis, Arizona. BROWN had in her possession a blue Motorola XT2513V cellular telephone bearing International Mobile Equipment Identity ("IMEI") number 350460823092616 (the SUBJECT CELLULAR TELEPHONE). BROWN requested an attorney declined to speak with investigators.

_____

[2]Both BROWN and RODRIGUEZ were subject to Court supervision for prior convictions at the time of their flight to Mexico.

5

16.     Based upon the foregoing facts, your Affiant is requesting authorization to review communications and/or photographs sent to or from the SUBJECT CELLULAR TELEPHONE during the period March 1, 2024, through and including March 7, 2026 (the date of the seizure of the SUBJECT CELLULAR TELEPHONE). Your Affiant asserts that the requested time period is necessary to ensure discovery of relevant evidence concerning the March 19, 2024 fentanyl transaction. Law enforcement officers believe that the SUBJECT CELLULAR TELEPHONE will contain evidence of the crimes committed by BROWN and may assist with identifying other co-conspirators and potential contraband storage locations, as well as provide records of communications between BROWN and other members.

17.     The SUBJECT CELLULAR TELEPHONE is currently in storage at the HSI Yuma vault.  In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as it was when the SUBJECT CELLULAR TELEPHONE first came into the possession of HSI.

## III.     ITEMS TO BE SEIZED

18.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B, will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

19.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

a.      Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other

6

capabilities of cellular telephones to further their drug trafficking activities. Therefore, evidence related to drug trafficking activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

   b.  Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities. Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT CELLULAR TELEPHONE.

   c.  Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions. Moreover, drug traffickers commonly take photographs of their firearms. Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on the SUBJECT CELLULAR TELEPHONE.

20.  In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

## IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

21.  As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

22.  *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

7

a.    Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.    Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular

8

telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

23.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

a.      Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while

9

executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

       c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

10

d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

19.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans, with respect to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), and/or 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), occurring during the period March 1, 2024, through and including March 7, 2026 (the date of the seizure of the SUBJECT CELLULAR TELEPHONE).

20.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

11

## V.   CONCLUSION

21.   Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), and/or 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

DAVID BEATTY

Digitally signed by DAVID BEATTY
Date: 2026.04.06 09:54:50 -07'00'

Special Agent David Beatty
Drug Enforcement Administration

telephonically

Subscribed and sworn to before me this ____6th____ day of April, 2026.

HONORABLE JAMES F. METCALF
UNITED STATES MAGISTRATE JUDGE

12